**In re Wayne Bernard FUNNEMAN, Debtor.**

**Bankruptcy No. 91–41672.**

United States Bankruptcy Court, S.D. Illinois.

June 8, 1993.

Terry Sharp, Mt. Vernon, IL, for Trustee Donald Hoagland.

William B. Austin, Effingham, IL, for debtor.

## OPINION

KENNETH J. MEYERS, Bankruptcy Judge.

Wayne Bernard Funneman (debtor) is one of four partners in the partnership commonly known as Funneman Farms (FF).[1] The partnership's assets consist of real estate and a checking account containing a nominal balance. The Court has no evidence before it of the partnership's liabilities.

On December 31, 1991, debtor filed a voluntary petition under chapter 7 of the Bankruptcy Code. Subsequently, Donald Hoagland was appointed as trustee to administer the bankruptcy estate's assets. During the course of administration, the trustee filed an adversary complaint (adv. no. 92–4151) under 11 U.S.C. section 363(h)[2] for the purpose of conducting a public sale of the real estate owned by the partnership.[3] In the complaint, the trustee

---

1. The remaining partners are Theodore H. Funneman, Maurice R. Funneman and Gary L. Funneman.

2. The complaint to sell is pled pursuant to section 363(h) alone. Belatedly, in argument to the Court, the trustee has turned to section 363(f) to try to justify his sale of the partnership property.

3. Although there is no dispute that the real estate is property which belongs to the partnership, defendants Wayne, Theodore and Maurice

Funneman answered certain allegations of the complaint in a way that the Court finds disturbing.

To paragraph 3 of the complaint which states:
3. At the time of the filing of the bankruptcy petition, the Debtor, Wayne Bernard Funneman and Theodore H. Funneman, Maurice R. Funneman and Gary L. Funneman d/b/a Funneman Farms, a partnership, jointly held title to the real estate described in Exhibit A,

Wayne, Theodore and Maurice answered respectively:

named as defendants, among others, the four partners, individually, but did not name the partnership as a defendant.[4] After all defendants either consented to the complaint or were found to be in default for failure to answer or to appear at trial,[5] judgment on the complaint was entered in favor of the trustee on February 10, 1993.

Subsequently, on April 2, 1993, the real estate was sold at auction to several bona fide purchasers. However, pursuant to the notice of sale which gave all interested parties until April 12, 1993 to file objections to the sale, FF filed an objection to the sale on April 12, 1993. The bases of FF's objection are two-fold: that the trustee failed to obtain personal jurisdiction over the partnership in the adversary lawsuit and that the Court lacks subject matter jurisdiction to sell the partnership's real estate. On April 14, 1993, the trustee filed a response to FF's objection requesting sanctions against FF on the grounds that its arguments are without basis in law and fact.

The Court turns first to the partnership's argument that it was not made a party to the adversary cause of action. In Illinois, "[a] partnership may sue or be sued in the names of the partners as individuals doing business as the partnership, or in the firm name, or both." 735 ILCS 5/2–411(a). *See* Fed.R.Civ.P. 17(b); Fed.R.Bankr.P. 7017(b) (capacity of a partnership to sue or be sued is determined by the law of the state in which the district court is held). Here, the complaint failed to join the partnership in its firm name and further failed to explicit-

ly state that the named partners were doing business as the partnership.[6] However, the Court need not decide whether in personam jurisdiction was, in fact, obtained over the partnership since the Court holds today that it lacks subject matter jurisdiction over the partnership property.

The Court's analysis resulting in the conclusion that it lacks subject matter jurisdiction begins with section 541 of the Bankruptcy Code. This section provides that the filing of a bankruptcy petition creates an estate comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Where a debtor, at the time of filing, is a member of a partnership, the Court must determine what effect membership in the partnership has on the bankruptcy estate.

Under the Uniform Partnership Act, S.H.A. 805 ILCS 205/1–43, a partner's interest in a partnership is a personal property interest consisting of "his share of the profits and surplus." *Id.* § 26. *See, e.g., In re Pentell,* 777 F.2d 1281, 1285 (7th Cir.1985). Although partners hold specific partnership property as tenants in partnership, S.H.A. 805 ILCS 205/25, the incidents of this tenancy are so limited that a partner has no right to possess partnership property except for partnership purposes and creditors of a partner cannot reach partnership property. *Id; see, e.g., In re Minton Group, Inc.,* 46 B.R. 222, 224–25 (S.D.N.Y. 1985); *In re Manning,* 37 B.R. 755, 758

---

Defendant is without knowledge of the allegations contained in [this] paragraph[ ] ... and all its subsections ... and they are, therefore, denied.

The same response was given to paragraph 7 of the complaint which states:

7. At the time of the filing of the bankruptcy petition herein, title to the real estate described in Exhibit A attached hereto was held in the name of Funneman Farms, a partnership, owned as follows:

Wayne Bernard Funneman, was the owner of a 1/4th interest

Theodore H. Funneman was the owner of a 1/4th interest

Maurice R. Funneman was the owner of a 1/4th interest

Gary L. Funneman was the owner of a 1/4th interest[.]

**4.** The complaint names as defendants Wayne Bernard Funneman; Theodore H. Funneman; Maurice R. Funneman; Gary L. Funneman; Sandra Funneman; United States of America, acting through Farmers Home Administration; State of Illinois, Division of Revenue; Wenthe Bros. Company; and Siemer Milling Company.

**5.** Of the defendants who are partners in FF, Wayne, Theodore and Maurice Funneman answered the complaint but failed to appear at trial. Gary Funneman never responded to the complaint.

**6.** Nonetheless, the complaint named all four partners as defendants and clearly sought the sale of partnership property.

(Bankr.D.Colo.1984), *aff'd,* 831 F.2d 205 (10th Cir.1987). Moreover, partners' rights in partnership property are secondary to the rights of partnership creditors. S.H.A. 805 ILCS 205/40. " 'Until the creditors of the partnership are satisfied, each partner has no right to any distribution from the partnership.' " *In re Olszewski,* 124 B.R. 743, 746 (Bankr.S.D.Ohio 1991) (quoting *Johnson v. Investment Leasing, Inc. (In re Johnson),* 51 B.R. 220, 222 (D.Colo. 1985)).

■ Consistent with the entity theory of partnerships embodied in the Uniform Partnership Act, the Bankruptcy Code accords a partnership the status of a "person," 11 U.S.C. § 101(41), and treats it as a separate legal entity distinct from the partners who created it. *E.g., In re Olszewski,* 124 B.R. at 746; *In re Dreske,* 25 B.R. 268, 270 (Bankr.E.D.Wis.1982). Accordingly, a partnership may be a debtor in bankruptcy in its own right, 11 U.S.C. § 109, but may not jointly seek relief with any other person, including with a partner. *E.g., In re Olszewski,* 124 B.R. at 746.

■ As a result, it is well settled that assets owned by a partnership are not included in the bankruptcy estate of an individual partner. *E.g., In re Minton Group, Inc.,* 46 B.R. at 226; *In re Olszewski,* 124 B.R. at 746 (citing *In re Pentell,* 777 F.2d at 1285); *In re Dreske,* 25 B.R. at 270–71. "The only 'partnership property' before the court during an individual partner's bankruptcy is the partner's personal property interest in the partnership," *In re Pentell,* 777 F.2d at 1285, which consists of "the individual partner's interest, if any, in the partnership assets after an accounting and payment of partnership debts out of the property belonging to the partnership."

*Turner v. Central Nat'l Bank,* 468 F.2d 590, 591 (7th Cir.1972). Clearly, then, the Court has no jurisdiction over specific partnership property when a partner—rather than the partnership itself—is in bankruptcy. *E.g., In re Pentell,* 777 F.2d at 1284–85; *In re Korangy,* No. 85–A–2277–PM, 1989 WL 34317, at *4–5 (Bankr.D.Md. Mar. 30, 1989), *aff'd,* 927 F.2d 596 (4th Cir.1991) (text in WESTLAW).

■ It necessarily follows that assets of a partnership may not be administered in the bankruptcy case of a member partner. Here, the trustee attempts to use sections 363(f) and (h) of the Bankruptcy Code, 11 U.S.C. §§ 363(f), (h), to authorize the sale of the partnership's real estate. However, section 363(f) authorizes the trustee to sell only the debtor's one-fourth undivided tenancy in partnership interest,[7] and not the real property owned by the partnership, which is not property of the estate. *In re Manning,* 831 F.2d 205, 207 (10th Cir.1987), *aff'g* 37 B.R. 755 (Bankr. D.Colo.1984); *In re Olszewski,* 124 B.R. at 746–47.[8]

■ Similarly, section 363(h) does not authorize the sale of partnership property. It allows the trustee to sell property, under certain conditions, free and clear of the interests of co-owners where the property is held in tenancy in common, joint tenancy, or tenancy by the entirety. However, the section does not apply to property held in tenancy by partnership. *In re Normandin,* 106 B.R. 14, 15–16 (Bankr.D.Mass. 1989); *In re Manning,* 37 B.R. at 757–59; *In re Victory Pipe Craftsmen, Inc.,* 12 B.R. 822, 824 (Bankr.N.D.Ill.1981).[9]

Finally, the trustee contends that the doctrines of res judicata and of the finality

---

7. Since evidence of partnership debt is not before the Court, the value of debtor's partnership interest cannot be determined.

8. "Section 363(f) provides for sale, under specified conditions, of 'property under subsection (b) or (c) of this section [363] free and clear of any interest in such property of an entity other than the estate.' Sections b and c, in turn, refer only to sale of 'property of the estate' and not to other property." *In re Manning,* 831 F.2d at 207.

9. *In re Woolston,* 147 B.R. 279 (Bankr.M.D.Ga. 1992), on which the trustee relies, is readily distinguished. Unlike the instant case, where there is no dispute that the real estate was owned by the partnership at all relevant times, the mobile home park in *Woolston* was determined to be the separate property of the individual partners each of whom held an undivided share in the property as a tenant in common. *Id.* at 282–84.

of bankruptcy sales bar FF's objection to the sale. The trustee relies on *In re Edwards*, 962 F.2d 641 (7th Cir.1992), to support this argument. In *Edwards*, the Court of Appeals refused to set aside a bankruptcy sale to a bona fide purchaser upon the challenge of a creditor who had not been notified of the sale at the time it occurred.

However, *Edwards* is unlike the instant case in several respects. Most notably, the court which ordered the sale in *Edwards* had subject matter jurisdiction over the property which was sold. Although, admittedly, the creditor in *Edwards* was denied due process of law, the Court of Appeals found this to be a legal error which was waived. *Id.* at 644. In contrast, the Court of Appeals found that "[w]ant of subject-matter jurisdiction is not waivable—until the loser has exhausted his appellate remedies. . . ." *Id. See also* Fed. R.Civ.P. 12(h)(3) ("[w]henever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action");[10] 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1393 (1990) (a challenge to subject matter jurisdiction may be presented by any interested party or by the court at any time at either the trial or appellate level and may, for example, be interposed as a motion for relief from a final judgment under Rule 60(b)(4) of the Federal Rules of Civil Procedure). Accordingly, the Judgment entered February 10, 1993—which was not appealed—is not an impediment to FF's jurisdictional challenge.

Additionally, the creditor in *Edwards* waited three and one half months after learning of the sale—which had occurred eighteen months earlier—to move to set it aside. The Court of Appeals, in balancing the respective harm to the creditor and to the bona fide purchaser, found negligible injury to the creditor whose own lack of diligence and zeal in the matter failed to warrant departure from the strict rule favoring the bona fide purchaser. *In re Edwards*, 962 F.2d at 645–46. However, here,

by the trustee's own hand, the sale was held on April 2, 1993 and interested parties were given until April 12, 1993 to object to the sale—which FF did within that time. Clearly, there could be no reasonable expectation on the part of either the trustee or the bona fide purchasers that the sale would be final until the objection period had passed.

Having ruled in favor of FF on its objection, the Court finds no merit in the trustee's contention that the partnership's arguments opposing the sale are sanctionable. However, on April 20, 1993, at the hearing on FF's objection to the sale, the Court ordered that in the event FF's objection was sustained, a hearing would be conducted to determine whether Wayne, Theodore and Maurice Funneman, individually, engaged in conduct sanctionable under Bankruptcy Rule 9011 by virtue of their respective answers to paragraphs 3 and 7 of the complaint filed in adversary case 92–4151. The Clerk shall schedule a hearing on the trustee's request for Rule 9011 sanctions.

See Order entered this date.

---

**10.** Fed.R.Civ.P. 12(h)(3) is made applicable to

this proceeding by Fed.R.Bankr.P. 7012.