**In re Dale S. JONES, Debtor.**

**Bankruptcy No. 90–02198–BKC–6C1.**

United States Bankruptcy Court,
M.D. Florida,
Orlando Division.

Nov. 6, 1990.

T. Kevin Knight, Drage, DeBeaubien, Knight & Simmons, Orlando, Fla., for debtor.

Robert L. Young, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Orlando, Fla., for movant.

## DECISION ON MOTION OF FIDELITY BANK, NATIONAL ASSOCIATION, FOR RELIEF FROM AUTOMATIC STAY

C. TIMOTHY CORCORAN, III, Bankruptcy Judge.

THIS CASE came on for evidentiary hearing on October 24, 1990, of the motion of Fidelity Bank, National Association, for relief from the automatic stay (Document No. 112). The motion requests this court to lift the stay for cause, as provided by Section 362(d)(1) of the Bankruptcy Code, because the debtor has no interest in the property that should be protected by the automatic stay.

The facts are essentially undisputed by the parties. Based upon the evidence presented at the hearing, the court makes the following findings of fact and conclusions of law:

### Findings of Fact

The debtor, Dale S. Jones, is an individual who has been engaged in real estate development in Central Florida for many years. During that time, the debtor carried out his business in his own name and through various corporations and partnerships in which he holds interests.

On June 11, 1990, the debtor filed a petition under Chapter 11 of the Bankruptcy Code in his individual name and as trustee of 18 separate land trusts. The court concluded that the "individually and as trustee" language and the names of the 18 land trusts contained in the caption of the petition deceptively implied that the land trusts were themselves joint debtors in the case contrary to the provisions of Section 302 of the Bankruptcy Code. The court therefore entered an order on June 27, 1990, striking from the petition and the case's caption all references to the debtor "as trustee" for the land trusts and "individually" and directed that the case would proceed simply with "Dale S. Jones" as debtor.

On June 15, 1987, the debtor entered into a joint venture agreement with five other partners to form a general partnership initially known as "Crystal Lake 301 and 302 Joint Venture". The purpose of the partnership was to acquire and develop into an office/warehouse complex certain real property located in Polk County, Florida. On July 6, 1989, the partnership's name was changed to "Crystal Lake Joint Venture."

The partnership now has about six partners holding various percentage interests. Since its formation, the debtor has held a 40 percent interest in the partnership. Another 20 percent of the partnership is held by J–F & Assoc. Equities, Inc., itself a debtor in a separate Chapter 11 case pending in this court. The debtor owns a majority of the stock in J–F; several other shareholders own the remainder of the stock.

On June 15, 1987, the partnership entered into a land trust agreement with the debtor, as trustee, and the partnership as the sole beneficiary of the land trust. Paragraph 1 of the trust states:

> *Bare Title Holder.* Trustee agrees to hold bare legal title to subject property pursuant to the terms and provisions of that certain CRYSTAL LAKE 301 AND 302, JOINT VENTURE of even date herewith and to act, as Trustee, at the written direction of the Partners in accordance with the terms and provisions of the aforementioned CRYSTAL LAKE 301 AND 302 JOINT VENTURE.

Paragraph 2 of the land trust provides:

> *Purpose.* The purpose of this trust is solely to hold legal title to the subject property and to act on behalf of the Partners to alleviate the necessity of all partners joining in execution of any instruments required in connection with sale, mortgage, and other such action involving recorded documents concerning such property.

Paragraph 3 provides, in part, that the debtor, as trustee, would have no individual liability or obligation arising from his ownership, as trustee, of the legal title to the partnership property. Furthermore, Paragraph 4 of the land trust provides, in part:

> *Objects and Purposes of Trust.* The objects and purposes of this Agreement shall be to authorize the Trustee to hold title to the partnership property and to take action with respect to it only as directed in writing by the Partners until its sale or other disposition or liquidation.

At the direction of the partnership, as beneficiary of the land trust, the debtor, as trustee, took title to the real property in Polk County, Florida, pursuant to a deed to trustee under trust agreement and a quit claim deed to trustee under trust agreement, both executed and delivered by Florida Southern College, as grantor, on July 7, 1987. At approximately the same time, the debtor, as trustee, pursuant to the direction of the partnership, executed and delivered to Fidelity Bank a promissory note in the principal sum of $2,055,000 dated July 6, 1987 ("note 1"), and a mortgage and security agreement ("mortgage 1") as security for the note, mortgaging a portion of the property transferred to the debtor, as trustee, by Florida Southern College. The deeds and mortgage 1 were duly recorded in the public records of Polk County, Florida. Other appropriate loan documents were also executed.

On July 6, 1988, debtor, as trustee under land trust dated June 15, 1987, executed and delivered to Fidelity Bank another promissory note in the principal sum of $2,600,000 ("note 2") and a mortgage and

security agreement ("mortgage 2") as security for the note, mortgaging the remainder of the property transferred to debtor, as trustee, by Florida Southern College. This mortgage was also duly recorded in the public records of Polk County, Florida.

Each note required the debtor, as trustee, to make monthly payments of interest and provided that the principal balance was due three years from the date of the note. No payments have been made on note 1 or note 2 since February, 1990, when the January payments were made. In addition, note 1 matured by its terms on July 6, 1990.

As of the date of the hearing, $2,281,467.62 was due under note 1, consisting of $2,053,115.00 in principal, $217,146.54 in accrued interest, and $11,206.08 in late charges. Interest is accruing on note 1 at $742.09 per day.

Also, as of the date of the hearing, $2,336,819.48 was due under note 2, consisting of $2,093,681.46 in principal, $221,338.83 in accrued interest, and $21,799.19 in late charges. Interest is accruing on note 2 at $756.06 per day.

Although the debtor testified that, in his opinion, there was approximately $400,000 of equity in the property, the debtor acknowledged on cross-examination that, as of the hearing date, only approximately $200,000 of equity existed, calculated as the difference between the debtor's estimate of value, $4,836,000, and the approximate debt owed to Fidelity Bank, $4,618,000. The debtor further acknowledged that this apparent equity would be consumed within approximately 144 days at the current rate of interest accruing on the loan, if no payments were made to Fidelity Bank. As discussed below, however, the issue of equity in the real property is irrelevant to the court's decision.

### Conclusions of Law

This court has jurisdiction of the parties and the subject matter pursuant to the Bankruptcy Code, 11 U.S.C. §§ 101 et seq., 28 U.S.C. § 1334, 28 U.S.C. § 157(a), and the standing order of reference entered by the district court. This is a core proceeding within the meaning of 28 U.S.C. § 157(b).

Pursuant to the provisions of Section 362(g) of the Bankruptcy Code, the debtor has the burden of persuasion on all issues relevant to this court's decision.

■ The first issue this court must address is whether the debtor has an interest in the real property that constitutes property of the debtor's estate pursuant to Section 541 of the Bankruptcy Code. The evidence clearly shows that the debtor holds bare legal title to the real property at issue and described in the mortgages. Pursuant to Section 541(d) of the Bankruptcy Code, therefore, the debtor's bare legal title to the property is property of the estate. Because bare legal title to the property is property of the estate, the automatic stay of Section 362 applies.

■ The next issue raised by Fidelity Bank's motion is whether cause exists under Section 362(d)(1) to lift the automatic stay to allow the bank to foreclose its interest in the real property. The court concludes that cause does exist.

Cause exists for the lifting of the automatic stay as to Fidelity Bank because the debtor's estate derives no benefit from the debtor's ownership, as trustee, of the bare naked legal title to the property. The beneficial owner of the property is Crystal Lake Joint Venture, a Florida general partnership. The debtor is not the beneficiary of the land trust, and the court cannot ignore the legal formalities of the partnership's structure, which were chosen by the debtor and the other partners at the time of the formation of the trust and the partnership, and pretend that the debtor himself is the trust beneficiary. If this court were to ignore such a structure and allow the automatic stay to continue in effect, the stay would benefit not only the debtor, but also the other partners who are not debtors before this court.

It is a fundamental principle of bankruptcy law that its effects do not normally benefit those who have not themselves come into the bankruptcy court with their liabilities and all their assets. For this

reason, in the bankruptcy case of an individual who is also a general partner of a general partnership, the automatic stay granted by Section 362 does not extend to property of the partnership. *See, Turner v. Lee (In re Minton Group, Inc.),* 46 B.R. 222, 225 (S.D.N.Y.1985), and *Venture Properties, Inc. v. Norwood Group, Inc. (In re Venture Properties, Inc.*), 37 B.R. 175, 176 (Bankr.D.N.H.1984). Were this not the law, the mere filing by one partner of a partnership would effectively protect the entire partnership's assets despite the fact the partnership, itself an entity that could be an eligible debtor were it to choose to file, has not chosen to seek bankruptcy protection (and correspondingly subject its assets to the bankruptcy reorganization process).

The debtor contends that, although he holds only bare legal title to the property, he is nevertheless in fact a substantial beneficial owner of the real property. He further contends that this beneficial ownership gives sufficient benefit to this estate to justify the retention of the automatic stay. The beneficial ownership to which the debtor refers is indirect, of course, because the beneficiary of the land trust is the partnership, not the debtor. The debtor argues that he owns a beneficial interest in the real property because he owns a 40 percent interest in the partnership that is the beneficial owner of the land and because he holds a majority ownership interest in a corporation that owns another 20 percent of the partnership. The debtor further points out that his ownership interests in the partnership and the partner corporation give him control in fact over the partnership and its affairs such that the court should ignore his lack of a direct beneficial interest in the real property and recognize the reality of the situation. Indeed, the debtor testified that he did not consult with the other partners or shareholders prior to filing his petition to obtain their permission or consent. The debtor further argues that his estate is benefited by the automatic stay because, when the proceeds of a sale of the property are distributed and trickle down through the partnership and the corporation to the individual investors, his share will be available as an asset of his estate to fund his plan.

Accepting the debtor's argument, of course, would require the court to ignore the form of ownership of the property selected by the debtor and the other partners when they formed the partnership. It would effectively require the court to "pierce the 'partnership' veil." It would mean the court should pretend the debtor's business is structured and conducted in a manner contrary to the way in which it is. It would also mean that all of the debtor's business associates would receive full bankruptcy court protection while insulating themselves from any obligation imposed by the bankruptcy process. Such a result would be as unfair to creditors as it would be inconsistent with the fundamental principles of the Bankruptcy Code.

The quantum or degree of the debtor's ownership and control in the partnership seems irrelevant to whether the property should obtain the protection of the bankruptcy court where the partnership has not itself filed for that protection. In this case, the debtor's ownership and degree of control are great. But the degree of his control cannot dictate the result without eviscerating the principle involved. In addition, how would the court draw the line? How much control keeps the stay in place? How much does not?

There is no essential difference in the debtor's position in this case and that of any debtor who might argue that "property of the estate" was involved and the stay should continue because the debtor owned an interest in a non-debtor entity which itself had a legal or equitable interest in some asset. This rationale could be used to justify the imposition of the automatic stay against assets merely because a debtor owned stock in the corporation owning the asset. *Venture Properties, Inc., supra* at 177. Does the debtor here own a single share of General Motors stock? If so, does the automatic stay also apply to General Motors Corporation? The question obviously answers itself.

The court also rejects the debtor's request that the court utilize its equitable

powers to pretend that the partnership itself is before the court. Whatever equitable powers this court has, it cannot use them in plain contravention of well-settled legal principles. The beneficial owner of the real property is the partnership, which is not now before the court. The debtor has no equitable interest in the real property. Because only naked legal title is property of this estate, no benefit is brought to the estate that should be protected. The partnership's equity in the real property is therefore an irrelevant consideration to the determination of this motion to lift the stay filed in this case, despite the fact that the partnership's equity would likely be a key factor in determining a motion to lift the stay if made in a case in which the partnership itself is the debtor.

Having found that cause exists, the court will enter a separate judgment lifting the stay and permitting Fidelity Bank to foreclose its mortgages.

DONE and ORDERED.